# IN THE COURT OF APPEALS OF IOWA

No. 18-0102
Filed March 21, 2018

**IN THE INTEREST OF M.M., M.L., and M.L.,**
**Minor Children,**

**B.H., Mother,**
          Appellant.

_____

Appeal from the Iowa District Court for Polk County, Colin J. Witt, District

Associate Judge.


A mother appeals the termination of her parental relationship with three

children. **AFFIRMED.**


Kelsey L. Knight of Carr & Wright, P.L.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

Erin E. Mayfield of Youth Law Center, Des Moines, guardian ad litem for

minor children.


Considered by Doyle, P.J., and Tabor and McDonald, JJ.

**TABOR, Judge.**

Ma.L., My.L, and M.M. were ages three years, two years, and two months when removed from their mother's care based on concerns about her substance abuse. Nineteen months later, the juvenile court terminated the mother's parental relationship with the children, concluding the "upheaval and chaos" in their young lives must "come to an end." The mother appeals the order, contending the State did not offer sufficient evidence for termination under Iowa Code section 232.116(1) (2017). She alternatively argues the court should have granted a six-month extension of permanency. She also alleges termination was not in the best interests of the children and would be harmful to them because of their close relationship with her. *See* Iowa Code § 232.116(2), (3)(c).

After independently reviewing the record,[1] we find clear and convincing evidence the children could not be returned to their mother's care at the time of the termination hearing. We conclude the mother did not preserve error on her request for additional time to work toward reunification. We also conclude the children's best interests are served by moving toward a stable, long-term living arrangement. Accordingly, we affirm the juvenile court's order.[2]

---

[1] We review termination-of-parental-rights proceedings de novo, which means examining both the facts and law and adjudicating anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We are not bound by the juvenile court's factual findings, but we give them weight, especially when witness credibility is at stake. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). The State must offer clear and convincing proof, which means we see no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (quoting *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000)).

[2] Ma.L.'s father is deceased. The juvenile court terminated the parental rights of the putative fathers of the other two children; those fathers are not parties to this appeal.

## I.    Facts and Prior Proceedings

In May 2016, the youngest child, M.M., tested positive at birth for tetrahydrocannabinol , the active component of marijuana.  The mother's middle child, My.L., also tested positive for illegal drugs when he was born in 2013.  The Iowa Department of Human Services (DHS) worried about the mother's ongoing substance abuse and the possibility that she committed the offense of operating while intoxicated (OWI) while one of the children was in the car.  When the mother did not respond to DHS inquiries, the State filed a petition to adjudicate the children in need of assistance (CINA).  The juvenile court granted the CINA petition in July 2016.  After the children were removed, their maternal grandmother stepped in to care for them.

During the fall and winter of 2016, the mother spent nearly 120 days in jail for her pending OWI charges.  But by February 2017, she had "made significant progress in stability in housing and mental health well-being," according to the juvenile court, though concerns surrounding her substance abuse and attendance at visitations persisted.  The next month, the mother's progress came to a halt.  She did not attend scheduled visitations, and her probation officer informed the DHS that she tested positive for methamphetamine, opiates, and cocaine.  "Per the probation officer, the mother admitted to using methamphetamine and Percocet but denied use of cocaine."  As a result of this probation violation, a warrant issued for her arrest.  In May 2016, the juvenile court directed the State to file a petition to terminate the mother's parental rights.  The court emphasized the maternal grandmother was not to allow the mother contact with the children "unless and until" the mother turned herself in on her outstanding warrant.

The juvenile court held a termination hearing in August 2017. The mother was incarcerated but attended the hearing. She testified that after her release from jail she would be going to inpatient treatment for several weeks. The mother had not visited the children since February 2017, five months earlier, because she had a probation warrant and did not want to go to jail. The mother expressed a desire to open a guardianship for the children with her mother. The juvenile court did not immediately terminate the mother's rights. Instead, in a September 6, 2017 order, the court ordered the DHS to take two steps: (1) have the case staffed by the African American Case Review Team in October and (2) meet with the maternal grandmother to review the differences between guardianship and termination of parental rights. The court ordered the children to remain in the grandmother's care.

Three weeks later, the State filed a motion to modify the placement, alleging the grandmother allowed the mother to have unsupervised contact with the children, and the children were left in the mother's care while she was under the influence of heroin. The State also indicated the grandmother was facing criminal charges for assault with a weapon. After the juvenile court filed a modification order, the DHS placed the children in foster care. The mother did not request visits with the children after they were removed from the grandmother's care. The court re-opened the termination record in early December 2017 and received additional exhibits. The foster parents reported to the court that the oldest child, Ma.L., was exhibiting concerning behaviors.

In January 2018, the juvenile court issued its order terminating the parental relationship between the mother and her three children. The court cited Iowa Code section 232.116(1), subparagraphs (b), (e), (f), and (h). The ruling noted:

> DHS has staffed this case with the African American Case Review Team in an effort to come up with culturally appropriate and equitable permanency options for this family and for these children, and some meaningful direction was given and is being taken seriously by DHS per the December 2017 report.

The mother now appeals the termination order.

## II.      Analysis of Mother's Claims

### A.  Statutory Basis for Termination

When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the order on any ground supported by clear and convincing evidence. *D.W.*, 791 N.W .2d at 707. In this case, we find clear and convincing evidence to support termination under section 232.116(1)(f)[3] for Ma.L., the oldest child, and section 232.116(1)(h)[4] for My.L. and M.M., the younger children.

---

[3] The State must prove these four elements:
　　　　(1) The child is four years of age or older.
　　　　(2) The child has been adjudicated [CINA under] section 232.96.
　　　　(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
　　　　(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.
Iowa Code § 232.116(1)(f).
[4] The State must prove these four elements:
　　　　(1) The child is three years of age or younger.
　　　　(2) The child has been adjudicated [CINA under] section 232.96.
　　　　(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six

The mother challenges the fourth element of both (f) and (h)—whether the children could have been returned to her custody "at the present time." Under both sections, "at the present time" means the time of the termination hearing. *In re A.M.,* 843 N.W.2d 100, 111 (Iowa 2014). The mother contends "she attended most court hearings and was engaged throughout the case when she was not incarcerated." Her contention ignores the five months she did not attend visitation with the children because of an outstanding warrant for her arrest and her refusal to set up visits after DHS placed them with a foster family. Because of her ongoing substance abuse and criminal difficulties the mother was not in a position to resume care of the children at the time of the termination hearing. Termination was proper under paragraphs (f) and (h).[5]

In her petition on appeal, the mother refers in passing to the possibility the juvenile court "could have provided an additional period of rehabilitation (in the form of a six-month extension of permanency) and if that had been granted, the mother may have been in a position to resume care at that point in time." The mother did not ask to defer permanency under section 232.104(2)(b) at either termination hearing. Accordingly, this argument is not properly before us. *Cf. In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999) (finding issue of additional

---

consecutive months and any trial period at home has been less than thirty days.

    (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h).

[5] The juvenile court believed paragraph (h) did not apply to My.L. because he turned four before the termination order issued. But because we look to the last day of the termination hearing as the critical time, we affirm the State's petition on that ground. *See M.W.*, 876 N.W.2d at 221.

services had not been preserved for appellate review where parent did not make demand in the juvenile court).

## B. Best Interests

The mother next contends termination was not in the children's best interests under section 232.116(2). That provision focuses on the children's safety, as well as the best placement for furthering their long-term nurturing and growth, and their physical, mental, and emotional condition and needs. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). In applying the statutory best-interest standard we cannot rule in a way that would deprive children of permanency by hoping someday their parent will be able to offer proper care and a stable home. *Id.* at 41. Here, the mother repeatedly exposed her children to illegal drugs and was not able to attend to their needs on a regular basis. As the juvenile court reasoned, the children's best interests were served by moving "in the direction of real and lasting permanency."

## C. Closeness of Relationship

Finally, the mother argues the juvenile court should have refrained from severing her legal ties with the three children because termination would be detrimental due to the closeness of the parent-child relationship. Iowa Code § 232.116(3)(c). The mother points to family safety, risk, and permanency reports noting that when she had supervised visits with the children the interactions went well, and the children looked forward to seeing her.

Whatever bond the mother had with her children was strained by the months on end when she did not attend visits. After reviewing the record, we conclude the closeness of the parent-child relationship is not cause for declining to go forward

with the termination. *See D.W.*, 791 N.W.2d at 709 (explaining "our consideration must center on whether the [children] will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [the children's] developing needs").

**AFFIRMED.**